WESTERN UNION TELEGRAPH COMPANY V. H. A. JACOBS.

No. 4319.    Decided February 10, 1926.

(280 S. W., 733.)

1.—Telegraph—Interstate Commerce—Federal Regulation—Limiting Liability.

The Federal regulation of interstate communication by telegraph is final and renders inapplicable, as to the validity of contracts limiting liability for negligence, the contrary State policy prevailing before its adoption. (Pp. 244, 245.)

2.—Same—Unrepeated Message.

Where an unrepeated message, sent "collect," relating to dealings in cotton, substituted "sell" for "buy" through negligence in transmission, causing damage to the sender to the amount of $144, a contract restricting the sender's recovery, when unrepeated, to the amount received for send-

ing it was too narrow a limitation and is not enforced. Following Western U. Tel. Co. v. Czizek, 264 U. S., 285. (Pp. 245, 246.)

### 3.—Valued Message.

The error in the transmission of an interstate message having caused damage of $144 to the sender, it being a valued message restricting damages, except for a higher rate, to $50 the sender was limited in his recovery to the latter amount. Western U. Tel. Co. v. Czizek, 264 U. S., 281, followed. (P. 246.)

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Grimes County.

The question was certified in obedience to the ruling of the Supreme Court in Jacobs v. Pleasants, 114 Texas, 242, the ruling of the Appellate Court, 245 S. W., 942, being held to conflict with Western U. Tel. Co. v. McDavid, 219 S. W., 853. The Supreme Court referred the question to the Commission of Appeals, Section A, for its opinion, and here adopt same as the answer to the question certified.

*Albert Stone* and *W. H. Flippen, (Francis R. Stark,* of counsel), for appellant.

Limitation of liability for mistake in transmission of an interstate message, sent at the lower rate for unrepeated message, to the amount received for sending it, being approved by the Interstate Commerce Commission, is valid; and as this charge was not paid by relator, he was not entitled to a judgment in any amount. Interstate Commerce Act (Carmack Amendment) June 29, 1906; Interstate Commerce Act as amended June 18, 1910; Primrose v. W. U. Tel Co., 154 U. S., 1; Adams Ex. Co. v. Croninger, 226 U. S., 490; Postal Tel. Co. v. Warren Godwin Lbr. Co., 251 U. S., 27; W. U. Tel. Co. v. Esteve Bros., 256 U. S., 566; W. U. Tel. Co. v. Czizek, 264 U. S., 281; Cultra v. W. U. Tel. Co., 44 Int. Com. Rep., 670; Cultra v. W. U. Tel. Co., 61 Int. Com. Rep., 541; Gardner v. W. U. Tel. Co., 231 Fed. Rep., 405; Czizek v. W. U. Tel. Co., 286 Fed. Rep., 478; W. U. Tel. Co. v. Wisner, 59 Pa. Sup. Ct., 122; W. U. Tel. Co. v. McDavid, 219 S. W., 853; Jacobs v. W. U. Tel. Co., 245 S. W., 942.

*Stoneham & Fahey,* for appellee.

Where a telegraph company enters into a contract to transmit and deliver a telegraph message, and one provision of the contract provides that the company shall not be liable beyond the amount received for sending the same unless the message was repeated, and the other provides that the company shall not be

liable beyond the sum of $50.00 for mistakes in transmission whether caused by the negligence of its servants or otherwise, and the company in transmitting an unrepeated message negligently commits an error in the message which injures the party sending the same and for whose benefit the same was sent, the second clause of the contract will apply and the company will be liable for damages in any sum not exceeding fifty dollars. Western U. Tel. Co. v. McDavid, 219 S. W., 853; Western U. Tel. Co. v. Norris, 60 S. W., 982.

Where the injured party has not paid nor agreed to pay and is not obligated to pay the charges for sending the message, the telegraph company cannot, by having filed its tariffs, schedules, rates, etc., with the Interstate Commerce Commission, totally exempt itself from liability in damages for its negligence in failing properly and correctly to transmit a message which it is bound by its contract to transmit. Siensheimer v. Maryland M. Car Co., 157 S. W., 228; Railway v. Underwood, 99 S. W., 92; Railway v. Fromme, 84 S. W., 1054.

In the case at bar appellee did not pay and was not obligated to pay the charges for the telegram filed by appellee. There was no basis, then, as between appellant and appellee, for making the rate from Navasota, Texas, to New Orleans the limit of appellant's liability to appellee. The appellant did not owe these charges back to appellee, because it did not receive them from appellee. If it received nothing from appellee on the basis of its filed rates, it could owe nothing to appellee on that basis. On its own interpretation of the tariff, its duty and liability are conditioned on its receiving the charges from appellee. The filed rate then cannot be the basis for appellant's liability to appellee.

Does appellant, then, escape all liability to appellee? We think not. It will be noted that none of the cited cases hold other than that a telegraph company may *limit* its liability.

MR. JUDGE NICKELS delivered the opinion of the Commission of Appeals, Section A.

### STATEMENT OF THE CASE.

Jacobs filed with the Telegraph Company at Navasota, Texas, an unrepeated collect telegram to be delivered to Atkinson & Company, at New Orleans, La., and reading as follows: "Buy one Jan." As delivered at New Orleans the message read: "Sell one Jan." The message related to a cotton transaction and the

change in the wording of the telegram caused an actual loss to Jacobs of $144.00. For this loss, as damages, he sued.

The telegraph company answered generally, and specially, pleaded certain of the stipulations printed on the telegram form used, which according to the face of the form were made a part of the contract. Those stipulations read as follows:

"All telegrams taken by this company are subject to the following terms: To guard against mistakes or delays, the sender of a telegram should order it repeated, that is, telegraphed back to the originating office for comparison. For this one-half of the unrepeated telegram rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated telegram and paid for as such, in consideration whereof it is agreed between the sender of the telegram and this company as follows:

"1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any unrepeated message beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery or for non-delivery of any repeated telegram, beyond fifty times the sum received for sending the same unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines, nor for errors in cipher or obscure telegrams.

"2. In any event the company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for non-delivery of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount this telegram is hereby valued, unless a greater value is stated in writing hereon at the time the telegram is offered to the company for transmission, and an additional sum paid or agreed to be paid based on such actual value equal to one-tenth of one per cent thereof."

Prior to the time in question, and with the approval of the Interstate Commerce Commission, the company had prepared and filed tariffs and classifications fixing one basis of rates for unrepeated messages and a higher basis for repeated ones, and, also, one basis of rates for non-specially valued messages and a higher basis for specially valued ones. The telegram in question was an unrepeated and a non-specially valued one, and the rate charged (and collected from the addressee at New Orleans) was seventy cents.

The trial court rendered judgment for Jacobs in the sum of $50.00. On appeal the Court of Civil Appeals reversed that

judgment and rendered judgment for the Telegraph Company—holding that the $50.00 valuation clause did not apply and that since Jacobs did not pay for the message he could not recover its cost. 245 S. W., 942. That court overruled a motion to certify for conflict between its decision and that of the Court of Civil Appeals in Telegraph Company v. McDavid, 219 S. W., 853. Upon application to the Supreme Court, mandamus issued, on recommendation of the Commission of Appeals, Section B, requiring certification, Jacobs v. Pleasants, 114 Texas, 242; 267 S. W., 251. In response the Court of Civil Appeals has certified the following question:

"Upon the facts stated, was appellee entitled to recover any amount in excess of the charges paid by him for the transmission of the message?"

In explanation of its prior refusal to certify the Court of Civil Appeals states that it realized the fact of conflict between its decision and that in Telegraph Company v. McDavid, but that it regarded the decisions of the Supreme Court of the United States in Postal Telegraph Company v. Warren Goodwin Lumber Co., 251 U. S., 27, and in Western Union Telegraph Co. v. Esteve Bros., 255 U. S., 653, as being controlling and conclusive upon all other courts and, hence, it did not believe it proper or necessary to certify as to "the conflict between the Supreme Court of the United States and the Court of Civil Appeals for the Second Supreme Judicial District of Texas."

### OPINION.

The transaction was interstate. Congress, and its agency, the Interstate Commerce Commission, with the help of the Telegraph Company as "primary" rate-maker, had under and pursuant to the Act of 1910 (36 Stat. L. 539) established regulations which required the telegram in question to be sent on the conditions named on the form used. Those terms, during the period of non-action by Congress and its agency, were invalid and unenforceable according to the State law. Western Union Telegraph Company v. Bailey, 108 Texas, 427; 196 S. W., 516; Adams Ex. Co. v. Croninger, 226 U. S., 491, 500, 57 L. Ed., 314, 44 L. R. A. (N. S.), 257; Minnesota Rate Cases, 230 U. S., 352, 409, 433; Western Union Tel. Co. v. James, 162 U. S., 650, 40 L. Ed., 1105; New York, N. H. & H. Ry. Co. v. New York, 165 U. S., 628, 41 L. Ed., 853; Missouri, K. & T. Ry. Co. v. Harris, 234 U. S., 419, 58 L. Ed., 1377, L. R. A. 1915 Ed., 942. But "it is of the essence" of the Federal power to regulate inter-

state commerce "that, where it exists, it dominates." Houston, E. & W. T. Ry. Co. v. United States, 234 U. S., 342, 28 L. Ed., 1341; and, when exerted, as here, is supersedes "all the regulations and policies of a particular state upon the same subject." Adams Ex. Co. v. Croninger, supra; Postal Tel. Co. v. Warren-Goodwin Lbr. Co., 251 U. S., 27, 64 L. Ed., 118; Western Union Tel. Co. v. Esteve Bros., 256 U. S., 566, 65 L. Ed., 1094; Western Union Tel. Co. v. Southwick, 255 U. S., 585, 65 L. Ed., 788; (Reversing judgment of the Court of Civil Appeals reported in 214 S. W., 987); Western Union Tel. Co. v. Czizek, 264 U. S., 281, 68 L. Ed., 682. The cases cited must be regarded as being final on the question of the inapplicability of contrary State policy in respect to transactions such as here involved, and, sequently, of the validity of the stipulations as controlling interstate messages.

The interpretation of the stipulations, then, is the only present concern. And in that aspect we regard the case as being ruled by Western Union Tel. Co. v. Czizek, supra. An agent of Czizek filed with the Telegraph Company, at its office in Boise, Idaho, an unrepeated non-specially valued telegram for transmission and delivery to Czizek at Oakland, California. The clerk who received the message at Boise, through inadvertence, etc., placed it in a file of previously handled telegrams with the result that it was not transmitted at all. On the next day inquiry about the contemplated reply was made at Boise and Czizek's agent was told that the telegram had been sent but no answer had come. Three days later another inquiry was made at the Boise office and Czizek's agent was told that he (Czizek) had received the message. Suit was brought to recover actual damages for resulting injury, and the Telegraph Company pleaded limitations of liability provided for in stipulations in all respects like those on the form used by Jacobs. The Circuit Court of Appeals "distinguished between a failure to take the first step toward transmission and some later neglect" and "held that the failure was not, and, as a matter of public policy, could not be within the protection" of the stipulations. The distinction was not favored by the Supreme Court, and in respect to the matter that Court said:

"Those terms apply as definitely to a non-delivery in consequence of a neglect or oversight at the first office as at any other. The moment the message is received the contract attaches along with the responsibility, and the transit begins. We can perceive no legal distinction between that moment

and the next when the message is handed to a transmitting clerk, or that on which a copy is given to a boy at the further end. The hand that holds the paper is technically that of the Company, but no more at the beginning than at the end, and as in fact it is that of servants, reasonable self-protection is allowed the master against their neglects. One such self-protection sanctioned by the decisions is a valuation of the message, with liberty to the sender to fix a higher value on paying more for it."

And it was held that the Company's liability was restricted to $50.00 by the second clause, the first clause being too narrow to relieve the Company above the charges exacted. Both clauses, as will be noted, in terms apply to "mistakes or delays in the transmission or delivery or for non-delivery,"—the second adding immediately "Whether caused by the negligence of its servants or otherwise." In the Czizek case it was held that "the transit begins" when the message is given to the "receiving clerk" at the sending office; if so, whatever then happens pertains as much to "transmission" as to "receipt," "delivery" or "non-delivery," and we perceive no ground upon which to rest a distinction between a "mistake," "neglect" or "inadvertence" which produces a failure to forward and one which causes a change of a word intervening moments of "receipt" and "delivery." Since one or the other of the stipulations here presented must be enforced, and since application of the second to the exclusion of the first approaches as nearly as possible to harmony with that general policy of the State announced in Western Union Tel. Co. v. Bailey, supra, and upon the authority of Western Union Tel. Co. v. Czizek, supra, we hold that the stipulations pleaded are obligatory upon Jacobs but that he is entitled to recover his damages within the fifty dollar valuation.

Accordingly, the question certified should be answered: "Yes."

The opinion of the Commission of Appeals answering certified questions is adopted, and ordered certified to the Court of Civil Appeals.

C. M. Cureton, Chief Justice.