Affirmed and Memorandum Opinion filed August 18, 2005









Affirmed and Memorandum Opinion filed August 18, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00254-CV

____________

 

MICHAEL
SCHAEFER, TRUSTEE, MICHAEL R. SCHAEFER, AND 

DEREK SCHAEFER, Appellants

 

V.

 

BELLFORT
CHATEAU L.P., Appellee

_____________________________________________________________________

 

On Appeal from the 281st District Court

Harris County, Texas

Trial Court Cause No. 00-05873

_____________________________________________________________________

 

M E M O R A N D U M   O P I
N I O N








This is an appeal by a father,
acting as trustee, and his two sons, the beneficiaries of two testamentary
trusts, from a jury verdict against them under the Texas Uniform Fraudulent
Transfer Act.  The trustee transferred
the assets of these trusts to the beneficiaries to avoid paying a
judgment.  In three issues, appellants
assert: (1) the trial court erred in denying their motion for directed verdict;
(2) the evidence is factually insufficient to support the jury=s answer
to question one in the jury charge; and (3) under California law, the evidence
is factually and legally insufficient to support the jury=s answer
to question two in the jury charge.  We
affirm the trial court=s
judgment.

                              I.  Factual
and Procedural Background

J. Michael Schaefer (AMichael@) has two
sons, Michael R. Schaefer (AMike@), born
July 23, 1973, and Derek Schaefer (ADerek@), born
November 12, 1971.  Michael is an
attorney.  He prepared estate planning
documents for both his mother, Mary Schaefer, and his aunt, Winfred DePiller. 

Mary Schaefer died January 1,
1988, and Michael probated her estate. 
Her will provided, Ahalf[1]
to her grandsons [Derek] and [Mike], share and share alike, or the survivor of
same, with her son [Michael] to serve as Trustee of said estate until the
youngest grandson attains the age of majority.@  The decree of distribution, issued on June
21, 1988, by the Superior Court of San Diego County, California, No. 145346,
states in relevant part, ADistribution
. . . with income and gains thereon to accumulate and not be withdrawn or
disbursed until youngest of said beneficiaries attains age of majority, and
[at] that time each beneficiary to be entitled to his pro rata share of corpus
of said Trust . . . .@

Winfred DePiller died on June 23,
1987, and Michael probated her estate as well. 
Her will provided in relevant part:

50% of her estate to her
great nephews [Derek] and [Mike], in trust, her nephew [Michael] to serve as
Trustee thereof, and to himself receive such amounts from said funds as he may
find necessary for his support during his lifetime in his normal manner,
utilizing income and any necessary amount of principal.

 








The decree of distribution, filed
on June 21, 1988, by the Superior Court of San Diego County, California, No.
143932, states in relevant part, AEstate
for benefit of minor children [Derek] and [Mike] . . . to be available to said
beneficiaries, as to their shares, upon attaining respective ages of majority.@  

Michael executed and filed a
declaration and waiver on June 6, 1988, stating in relevant part, regarding these
two testamentary trusts that he will Aturnover
said corpus to said minor children, upon demand after they attain the age of
majority and can competently (as adults) administer their respective 50% of the
Trust corpus.@ 
On December 15, 1988, the judge signed an amended order correcting the
June 21, 1988 decree of distribution regarding the DePillar will.  It reflected the language of the declaration
and waiver.  The amended order added a
paragraph declaring the portion of the DePiller will giving Michael Afunds as
he may find necessary for his support during his lifetime . . .@
void.  Michael, acting as Trustee of the
two testamentary trusts, purchased real property and securities with the trust
assets.  The evidence at trial shows that
Michael operated the trusts as a single trust. 


Both beneficiaries reached the
age of majority by July 23, 1991; the eldest, Derek, reached the age of
majority in 1989.  Derek knew he had a
right to the trust assets after he reached the age of majority, but decided to
let his father, Michael, continue as trustee. 
After both beneficiaries reached the age of majority, Michael Schaefer,
Trustee continued to manage the trust and wrote monthly disbursement checks to
his sons as well as a check to himself. 
Both Derek and Mike testified that Michael kept them informed of all
transactions and the status of the trust. 









On July 7, 1995, Chandrakant
Shah, on behalf of the National Motel Corporation, signed a note promising to
pay Michael Schaefer, Trustee a designated sum for the purchase of a
motel.  On July 1, 1997, Shahrokh Ajudani
and his wife signed two notes promising to pay Michael Schaefer, Trustee a
designated sum for the purchase of an office building in Houston, Texas.  Michael accepted payment on the notes as
trustee, endorsed the checks as trustee, and deposited them in the trust
account.  Although Michael testified at
trial that these promissory notes were a part of the trust and that he acted as
trustee until the trial court announced a judgment against him as the trustee,
he also testified that upon his sons=
attaining the age of majority, he merely acted as their manager or agent
because the trusts had terminated.

Bellfort Chateau Limited
Partnership sued Michael Schaefer, Trustee. 
The trial court signed a judgment against Michael Schaefer, Trustee on
January 14, 1999.  However, on January
11, 1999, just after the trial court announced its judgment against Michael
Schaefer, Trustee in open court following a bench trial, Michael executed an
assignment of the trusts= assets
to the beneficiaries, leaving the trust virtually without any assets.  Neither beneficiary had ever demanded
disbursement of the trust assets.  In
fact, Michael stated that he put everything in his sons= names
because he decided to get out of the Atrustee
business.@ 
He further explained that the judgment against him as trustee was a
motivating factor for him leaving the Atrustee
business.@ 
Following the disbursement of the trust assets, Michael continued to
manage his sons= assets
and collect a monthly management fee. 

Bellfort Chateau then filed suit
in the trial court below, alleging that Michael Schaefer, Trustee and his two
sons violated the Texas Uniform Fraudulent Transfer Act.  Michael, Mike, and Derek (collectively, Athe Schaefers@),
however, assert that the trusts automatically terminated when the beneficiaries
turned eighteen, and, thus, the transfers were merely ministerial. 

After the close of the evidence
in a jury trial, the Schaefers moved for a directed verdict, claiming for the
first time that California law governs. 
Bellfort Chateau objected, but the trial court proceeded to hear the
Schaefers= argument.  The Schaefers handed copies of two California
Codes and a few California cases to the trial court during their argument.  Thereafter, the trial court denied the motion
for a directed verdict.  The jury found
that the transfers were fraudulent.  The
trial court rendered a judgment and turnover order in favor of Bellfort
Chateau.  








The Schaefers appeal, asking this
court to reverse and render judgment.  In
three issues, they argue that (1) the trial court erred in denying their motion
for directed verdict; (2) the evidence is factually insufficient to support the
first question in the jury charge; and (3) under California law, the evidence
is factually and legally insufficient to support the jury=s answer
to the second question in the jury charge. 

II.  Issues
and Analysis

A.        Did the trial court err in denying the
Schaefers= motion for directed
verdict?

In their first issue, the
Schaefers assert that the trial court erred in denying their motion for
directed verdict.  Specifically, they
assert that California law applies and that, under California law, the trusts
automatically terminated when both beneficiaries reached the age of majority,
eighteen years of age.  

We review a trial court=s
conflict-of-laws determination de novo.  Pittsburgh
Corning Corp. v. Walters, 1 S.W.3d 759, 769 (Tex. App.CCorpus
Christi 1999, pet. denied).  Judicial
notice of the laws of another jurisdiction may be made at any stage of the
proceeding.  Tex. R. Evid. 202. 
However, a conflict-of-laws issue is distinct from the trial court=s power
to take judicial notice of a foreign state=s
law.  Pittsburgh Corning Corp., 1
S.W.3d at 769. We presume California law is the same as Texas law unless the
Schaefers prove otherwise.  See
Weatherly v. Deloitte & Touche, 905 S.W.2d 642, 650 (Tex. App.CHouston
[14th Dist.] 1995, writ dism=d
w.o.j.), leave granted, mand. denied, 951 S.W.2d 394 (Tex. 1997). 








At the conclusion of the trial,
the Schaefers made an oral motion for a directed verdict, arguing that, under
California law, the trusts in question terminated as a matter of law on July
23, 1991, when Mike reached the age of majority.  The Schaefers asked the trial court to take
judicial notice of California law.  The
trial court noted that it had not considered California law previously because
this was the first time this issue was raised. 
After Bellfort Chateau objected to this request for judicial notice, the
Schaefers provided the trial court with copies of a couple of California codes
as well as a few California cases.  The
Schaefers did not move for directed verdict under Texas law. Furthermore, they
did not make any argument as to how California law differs from Texas law with
regard to these issues or as to why California law should be applied under a
conflict-of-laws analysis.  Without
stating whether it was applying California law or Texas law, the trial court
simply denied the Schaefers= motion
for directed verdict; however, on this record, the trial court would not have
erred in applying Texas law rather than California law.  See Weatherly, 905 S.W.2d at 650. 








Under Texas law, A[a] trust
terminates if by its terms the trust is to continue only until the expiration
of a certain period or until the happening of a certain event and the period of
time has elapsed or the event has occurred.@ Tex. Prop. Code ' 112.052
(Vernon 1995). Regardless of what motion a party uses to preserve a no-evidence
challenge to fact findings, the same standard of review applies.  City of Keller v. Wilson, __ S.W.3d
__, __, No. 02-1012, 2005 WL 1366509, at *11 (Tex. June 10, 2005).  In determining whether the trial court erred
in denying the Schaefers= motion
for directed verdict, we must consider evidence in the light most favorable to
the challenged finding and indulge every reasonable inference that would
support it.  See id., __
S.W.3d at __, 2005 WL 1366509, at *10. 
We must credit favorable evidence if a reasonable factfinder could and
disregard contrary evidence unless a reasonable factfinder could not.  See id., __ S.W.3d at __, 2005
WL 1366509, at *14.  We must determine
whether the evidence at trial would enable reasonable and fair-minded people to
find the facts at issue.  See id.  The factfinder is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  See id., __ S.W.3d at __, 2005
WL 1366509, at *8.  This court must
sustain a no-evidence challenge if the record shows one of the following: (1) a
complete absence of a vital fact, (2) rules of law or evidence bar the court
from giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a scintilla, or (4) the
evidence establishes conclusively the opposite of the vital fact.  See id. __ S.W.3d at __, 2005
WL 1366509, at *2.   

In their motion for directed
verdict, the Schaefers asserted that, as a matter of law, the two trusts in
question terminated on July 23, 1991, when Mike turned eighteen.  However, the applicable trust documents show
that these trusts do not, by their terms, continue only until the expiration of
a certain period or until the happening of a certain event.  See Tex.
Prop. Code '
112.052.  None of the trust documents
state that the trusts are to continue only until all the beneficiaries have
reached the age of majority.  Rather,
these documents permit the beneficiaries, if they wish, to obtain their share
of the trust corpus upon reaching the age of majority.  Allowing for such a possibility is not the
same as stating that the trusts shall terminate when all beneficiaries have
reached the age of majority.  Under the
applicable standard of review, the trial court did not err in implicitly
determining that the trusts in question do not, by their terms, continue only
until the expiration of a certain period or until the happening of a certain
event.  See Tex. Prop. Code '
112.052.  Accordingly, we overrule the
first issue.  

In part of their third issue, the
Schaefers assert that there is legally insufficient evidence to support the
jury=s answer
to question two, in which the jury found that Michael made fraudulent transfers
to Mike and Derek.  The Schaefers assert
legal insufficiency based on the alleged termination of the trusts as a matter
of law on July 23, 1991, when Mike turned eighteen.  For the same reasons stated above, we reject
this legal sufficiency challenge and overrule the part of the third issue
relating to legal sufficiency.  

B.        Is the evidence factually sufficient to
support the jury=s answer to the first and
second questions in the jury charge?

In their
motion for new trial, the Schaefers objected to the factual sufficiency of the
evidence in support of the jury=s answer
to question one in the jury charge.  In
its response to this question, the jury answered as follows:








            Was J. Michael Schaefer acting in the capacity of trustee
of the Winfred DePillar and/or the Mary Schaefer Trust and any subsequent trust
created with assets or proceeds of those trusts at the time he transferred the
assets listed below?

A
person acts in his capacity as trustee if he is authorized to act as trustee,
and acts within the course and scope of his duties as trustee in furtherance of
the business of the trust.  

Answer AYes@ or ANo@ for each of the assets
listed below:

a.         The Ajudani Notes and any lien rights
securing those notes:

Answer: Yes

b.         The National Motel Corporation Note and
any lien rights securing that note:

Answer: Yes

 

When
reviewing a jury verdict to determine the factual sufficiency of the evidence, we examine the entire record,
considering both the evidence in favor of, and contrary to, the challenged
finding.  Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986).  After considering
and weighing all the evidence, we set aside the jury=s finding only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629,
635 (Tex. 1986).  The jury is the sole
judge of the credibility of the witnesses and the weight to be given to their
testimony.  GTE Mobilnet of S. Tex. v.
Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  We may not substitute our own
judgment for that of the jury, even if we would reach a different answer on the
evidence.  Maritime Overseas Corp. v.
Ellis, 971 S.W.2d 402, 407 (Tex. 1998). 
The amount of evidence necessary to affirm a judgment is far less than
that necessary to reverse a judgment.  Pascouet,
61 S.W.3d at 616. 








Neither
the wills nor the decrees of distribution state unambiguously that the trusts
will terminate after all the beneficiaries have reached the age of
majority.  Rather, they permit the
beneficiaries to obtain their share of the trust corpus if they wish, upon
reaching the age of majority.  Allowing
this option does not trigger termination of the trusts upon Mike=s
reaching the age of majority. 
Furthermore, the evidence at trial is factually sufficient to support a
finding that neither of the beneficiaries asked for the trusts corpus to be
disbursed to them or that the trusts be terminated on or after reaching
eighteen years of age.              In addition, both of the
beneficiaries desired their father Michael to continue operating the
trusts.  The evidence at trial showed
that, although Derek knew he had a right to the trust assets at age eighteen,
he decided to let his father continue to operate the trusts.  Derek never asked for the trust property to
be distributed to him, and he allowed his father operate as trustee even after
the lawsuit was filed.  Mike testified
that his sons appointed him as trustee when they both reached the age of
majority in 1991, and that there is a written agreement memorializing this
appointment.[2]


Although
Michael gave some testimony that upon his sons=
attaining the age of majority he merely acted as a manager or agent for his
sons, the vast majority of his testimony and actions support the jury=s answers
to question one.  Michael testified he
was the trustee and performed acts as trustee after his sons reached the age of
majority.  Michael=s
declaration and waiver stated in relevant part that he would turn over the
corpus of the Schaefer and DePiller trusts to the beneficiaries Aupon
demand@ after they attain the age of
majority and can competently (as adults) administer their respective 50% of the
trust corpus.  Michael testified that
neither of his sons ever demanded the trust corpus.








Michael
consistently acted as trustee, held himself out as trustee, and conducted
transactions as trustee up until the time he transferred the trusts= assets
on January 11, 1999.  He bought and sold
real property in both Houston, Texas and Tulsa, Oklahoma, as trustee, through
1997.  Michael entered into promissory
notes as trustee and accepted payments on these notes as trustee from 1995
through 1999.  He also represented to
courts in Texas and California, from 1994 through 2000, that he was the
trustee.  In the prior lawsuit against
Bellfort Chateau, he identified himself in a sworn counterclaim and in answers
to interrogatories as Michael Schaefer, Trustee.  The January 14, 1999 judgment in the
underlying lawsuit is against Michael Schaefer, Trustee.  Michael also signed a letter on October 12,
1997 regarding the trusts.  In this
letter, he states that the trust is his responsibility.  Furthermore, throughout 1998 and 1999, Ajudani
made payments on the promissory notes to Michael Schaefer, Trustee and they
were endorsed by Michael Schaefer, Trustee and deposited in the trust
account.  Michael even testified that the
notes were a part of the trust and that he had acted as a trustee throughout
the litigation until the trial court announced its judgment in open court. 

There is
factually sufficient evidence to show that Michael was acting in the capacity
of trustee of the DePillar and Schaefer Trusts at the time he transferred the
Ajudani and National Motel Corporation notes and any lien rights securing those
notes.  Under the applicable standard of
review, we conclude the evidence at trial is factually sufficient to support
the jury=s answer
to question one in the charge. 
Accordingly, we overrule the Schaefers= second
issue.  

In part
of their third issue, the Schaefers assert the evidence is factually
insufficient to support the jury=s answers
to question two because the trusts terminated on July 23, 1991, when Mike
turned eighteen, thus depriving Michael of any ability to act as trustee
regarding the trust assets.  Under the
applicable standard of review and for the reasons stated above, we likewise
conclude that there is factually sufficient evidence to support the jury=s answer
to question two.  Accordingly, we
overrule the remaining part of the third issue.

Having
overruled all of the Schaefers= issues,
we affirm the trial court=s
judgment. 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed
August 18, 2005.

Panel consists of Justices Anderson, Hudson, and
Frost.

 











[1]  Mary Schaefer=s will left half of 95% of her estate to her grandsons
Derek and Mike.  





[2]  The evidence
at trial did not include a copy of any such written agreement.